IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | § |
| | § |
| | § CASE NUMBER 4:18-CR-19-ALM-KPJ |
| v. | § |
| | § |
| | § |
| JAMES MICHAEL MURRAY | § |
| | § |

**REPORT AND RECOMMENDATION OF**
**UNITED STATES MAGISTRATE JUDGE**

Before the court is Defendant James Michael Murray's ("Defendant") Motion to Suppress Evidence and Brief in Support (the "Motion") (Dkt. 159), the matter having been referred to the undersigned by the Honorable Amos L. Mazzant, III (*see* Dkt. 161). The Government filed a response in opposition. Dkt. 181. Defendant filed a Reply to Response to Motion to Suppress evidence. Dkt. 186. On October 3, 2018, the Court held a hearing on the contested issues. Dkt. 200. At the hearing, the Government was represented by Assistant United States William Tatum ("AUSA Tatum") and Defendant was represented by Gabriel Robles ("Robles"). Both parties filed supplemental briefing after the October 3, 2018, hearing. *See* Dkts. 202, 204.

Having considered the Motion, response, evidence and attorney argument presented at the hearing, and supplemental briefing from the parties, the Court recommends the Motion (Dkt. 159) be denied.

**BACKGROUND**

On October 16, 2016, Defendant was placed on three years of supervised release after serving a sentence of imprisonment on a federal drug conspiracy charge. *See* 4:12-cr-00211, Dkt. 206. One condition of Defendant's release was that he not possess or use illegal drugs. On October

19, 2017, United States Probation Officers Elizabeth McAlpin ("McAlpin") and Hunter Epps ("Epps") (collectively, the "Probation Officers") visited Defendant's residence to conduct a routine home visit pursuant to the terms of Defendant's supervised release.[1] Defendant allowed the Probation Officers to enter his residence and, upon entering the residence, the Probation Officers saw drugs and drug paraphernalia in plain view on Defendant's dining room table. The Probation Officers testified that Defendant admitted the drugs were his. Epps placed the drugs and paraphernalia in a blue "banker's bag" and put the bag on a pool table near the entrance of the residence. Defendant submitted to a drug test which tested positive for methamphetamine. *See* Dkt. 159 at 2. The testimony of the Probation Officers was supported with photographs taken at the scene, depicting drugs and drug paraphernalia on the dining room table, including a syringe, spoon, and white substance. *See* Dkts. 201-1, 201-2, 201-3.

The Probation Officers asked Defendant to step outside the residence after discovering the drugs. While outside on the front porch with Defendant, McAlpin called local law enforcement, the Paris Police Department ("Paris PD"), wherein she requested that an officer take possession of the drugs and drug paraphernalia. Officer Brandon Langehennig ("Langehennig") responded to McAlpin's call.[2] When Langehennig arrived at Defendant's residence, Defendant and the Probation Officers were standing on the front porch of Defendant's residence. The Probation Officers summarized the situation pursuant to Langehennig's request, and then Langehennig asked Defendant if the drugs belonged to him. After Defendant admitted the drugs were in fact his, Defendant was placed in handcuffs. Langehennig then asked Defendant, "Can you show me the meth?" Defendant responded, "Sure," and then turned towards the door of his residence, opened

---

[1] The Probation Officers both testified at the Motion hearing.
[2] Langehennig testified at the Motion hearing, and his testimony was supported by twenty-six minutes of body-camera video and audio. The body-camera footage showed all relevant interactions with Defendant and the Probation Officers. *See* Dkt. 201, ex. 5.

the door, and led Langehennig to the pool table where the bagged drugs were located. Defendant gestured to the drugs with his hands. Langehennig took Defendant and the drugs outside of the residence, informed Defendant that he was under arrest, and placed him in Langehennig's patrol vehicle. Langehennig subsequently asked Defendant for permission to search his residence, and Defendant refused. Paris PD later obtained a search warrant and additional drugs were found in the residence. *See* Dkt. 159 at 2; Dkt. 201-4.

Defendant was arraigned by a Lamar County magistrate judge on charges of unlawful possession of methamphetamine with intent to distribute, and bonded out of jail on or about December 25, 2017. *See* Dkt. 159 at 2. On January 12, 2018, a petition for arrest warrant and revocation of supervision was filed (*see* 4:12-cr-00211, Dkt. 226 (revoking supervised release related to Defendant's 2012 sentence)), and on January 23, 2018, a federal arrest warrant was issued (*see* 4:12-cr-00211, Dkt. 227). On January 29, 2018, Defendant was arrested by Paris PD on the federal warrant. *See* 4:12-cr-00211, Dkt. 238. A search incident to Defendant's arrest disclosed additional drugs on Defendant's person, and thus, additional state possession charges were filed. *See* Dkt. 159 at 3. On February 14, 2018, Defendant was indicted for a violation of 21 U.S.C. §§ 846, 841(a)(1), Conspiracy to Distribute and Possess with Intent to Distribute Methamphetamine, *see* Dkt. 13, and on February 23, 2018, an amended petition for revocation was filed. *See* 4:12-cr-00211, Dkts. 238, 244. On March 1, the Court issued the Order for Writ of Habeas Corpus Ad Prosequendum, (*see* 4:18-cr-00019, Dkt. 41), on which Defendant was transferred into federal custody on March 2, 2018. Defendant seeks to suppress "all evidence sought to be used against him at trial," including "the seized drugs, along with the statements made by Murray." *See* Dkt. 159 at 3.

## ANALYSIS

Defendant raises three grounds for suppression: whether (1) it was improper for the Probation Officers to contact local law enforcement regarding Defendant's possible commission of a new crime; (2) Defendant gave Langehennig consent for the warrantless entry into Defendant's residence on December 19, 2017; and (3) the thirty-seven day delay between Defendant's arrest on the federal warrant and appearance before a federal magistrate judge violated his rights. *See* Dkt. 159. Defendant argues suppression of all evidence is the appropriate remedy for the alleged violations. *Id*

### A. Probation Officers Contact of Local Law Enforcement

Defendant argues that U.S. probation officers should not turn over evidence of new crimes to local police departments when that evidence is found in the scope of their duties monitoring supervised release. Here, all parties acknowledge the Probation Officers' visit was a routine, unannounced probation visit to verify that Defendant was not violating conditions of his supervised release. *See* Dkt. 181 at 2; Dkt. 186 at 3.

U.S. probation officers are required to "keep informed, to the degree required by the conditions specified by the sentencing court, as to the conduct and condition of a probationer . . . on supervised release," including unannounced visits to a probationer's residence to verify compliance with court orders. *See* 18 U.S.C. § 3603. Defendant admits that while under federal adult probation/supervised release, he was "on notice that he is subject to unannounced home visits by his probation officers." Dkt. 186 at 3. Accordingly, Defendant's claim that suppression is necessary because the Probation Officers contacted the local police to take possession of the drugs and drug paraphernalia located at Defendant's residence is unfounded and should be denied.

**B. Consent to Enter Residence**

Defendant argues that he did not consent to entry into the residence by Langehennig, thus any drugs found in the residence should be suppressed. In order for consent to enter a residence to be valid, it must be given freely and voluntarily. *United States v. Olivier-Becerril*, 861 F.2d 424, 425 (5th Cir. 1988). The question as to whether consent is voluntary is a "question of fact to be determined from a totality of the circumstances." *Id.* at 425 (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973)). Courts use a six factor test to determine whether consent to search is voluntary, of which no single factor is dispositive or controlling: (1) voluntariness of the defendant's custodial status; (2) presence of coercive police procedures; (3) extent and level of the defendant's cooperation with police; (4) the defendant's awareness of his right to refuse to consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found. *Id*. at 426.

Extensive testimony from the Probation Officers and Defendant established that Paris PD responded to a phone call from McAlpin, who requested that local law enforcement take possession of the drugs and drug paraphernalia found at Defendant's residence. At the time the Probation Officers called Paris PD, Defendant was not handcuffed or otherwise detained or under arrest. Defendant was asked, not ordered, to show Langehennig the methamphetamine, and Defendant walked unassisted into his residence and directed the officer to the drugs.

Defendant contends he was detained on the front porch of his residence, first, by the Probation Officers, and second, by Langehennig, and therefore, felt that Langehennig's question, "Can you show me the meth?" was a demand with which he was required to comply.

On the stand, Langehennig acknowledged that Defendant was detained and handcuffed after admitting to possession of methamphetamine. However, the Government argues that

5

Defendant gave valid consent to enter the residence by leading Langehennig to the methamphetamine. While Defendant was handcuffed and admits to being a drug addict, the handcuffs and addiction did not overwhelm Defendant's ability to consent. As seen in the video, Defendant was calm, aware, and able to answer questions cogently. During his testimony, Defendant admitted that at the time of his arrest, Defendant knew he faced serious drug charges for the drugs found at his residence. Additionally, Defendant's later denial of consent to search his entire residence demonstrates that Defendant was aware of his right to refuse consent and was not overwhelmed by coercive police tactics.

Applying the six-factor test, Defendant was detained and handcuffed; however, he was aware and intelligent when deciding whether to comply with Langehennig's request, leading the officer into his residence and directing him to the drugs. Defendant was also aware of his right to refuse consent, as evidenced by his refusal to give consent to Langehennig to search his residence after being placed under arrest. For these reasons, Defendant gave valid consent for Langehennig to enter his home for the purpose of showing him the methamphetamine, and thus, his Motion on this ground should be denied.

### C. Unnecessary Delay

Defendant's third ground for urging suppression is because of an "unnecessary delay" between the issuance of a federal arrest warrant and Defendant's appearance before a federal magistrate judge. *See* Dkt. 159 at 9; Dkt. 202 at 3. Defendant alleges that his arrest violated Federal Rule Criminal Procedure 4(c)(4) because after Defendant's arrest by Paris PD, no return was filed with the federal court for thirty-seven days.[3] *See* Dkt. 159 at 8–9; Dkt. 202 at 3. Defendant alleges that as a result, there was an "unreasonable delay in [Defendant] being brought before this court

---

[3] Defendant was arrested on the federal warrant on January 29, 2018, and appeared before a United States magistrate judge on March 6, 2018. *See* 4:18-cr-00019, Dkt. 159 at 9; Dkt. 202 at 3.

to answer on the motion to revoke his supervised release for which the warrant was issued in the first place." Dkt. 159 at 9.

Further, in supplemental briefing, Defendant alleges that the Government committed a "fraudulent misrepresentation" by not filing a return on the execution of the warrant until March 2, 2018. *See* Dkt. 202 at 2. Defendant alleges the misrepresentation frustrates the Court's Article III function to protect the rights of persons charged with criminal offenses, because Federal Rule of Criminal Procedure 5(a)(1)(A) provides that defendants must be brought before a magistrate judge without unnecessary delay. *See* Dkt. 202 at 2–3.

The Government argues that while Defendant's arrest on January 29, 2018, was effectuated under the warrant to revoke Defendant's supervised release, Defendant was also charged by the state for Manufacture/Delivery of a Controlled Substance related to the drugs found on his person at the time of his arrest. *See* Dkt. 181 at 5–6. Defendant was indicted by a federal grand jury on February 14, 2018 (Dkt. 13), and a motion for Writ of Habeas Corpus (Dkt. 32) was filed at that time. *See* Dkt. 204 at 2. On March 2, 2018, the order for a Writ of Habeas Corpus was issued. *See* Dkt. 204 at 2 (citing Dkt. 41). On March 6, 2018, Defendant appeared in this Court for his initial appearance on the allegations from the indictment and petition for revocation of supervised release. *See* Dkt. 204 at 2. Thus, the Government argues, because Defendant was also arrested on state charges, and brought before a magistrate judge pursuant to additional federal charges on March 6, 2018, there was no unnecessary delay before Defendant appeared before a United States magistrate judge. *See* Dkt. 181 at 6; Dkt. 204 at 1.

Probationers must be brought before a magistrate judge without unnecessary delay to answer on an application to revoke supervised release. FED. R. CRIM. PROC. 32.1(a)(1). While Defendant argues the Court should use its inherent authority to sanction the Government due to

7

the delay, he fails to present Fifth Circuit precedent on the issue of whether a defendant held on both state and federal charges faces unreasonable delay when he is held in state custody for thirty-seven days before being brought before a federal magistrate judge. *See* Dkt. 202 at 5.

"The right to a revocation hearing accrues once the warrant has been executed and the defendant has been taken into federal custody." *United States v. Nickerson*, 197 F. Appx. 325, 326 (5th Cir. 2006) (citing *United States v. Tippens*, 39 F.3d 88, 89–90 (5th Cir. 1994)); *see also United States v. Pardue*, 363 F.3d 695, 697–98 (8th Cir. 2004) (a defendant was held in state custody for roughly five and a half months, but "no undue federal incarceration occurred" because he was held for both state charges and federal violations of his supervised release). "Nevertheless, due process rights may be impeded by a delay in the execution of a warrant if the delay undermines defendant's ability to contest the issue of the violation or to proffer mitigating evidence." *Id.* (internal punctuation omitted) (holding that a two-month delay between the execution of the warrant and the revocation hearing was not unreasonable because the defendant suffered no specific prejudice from the delay). Here, Defendant alleges he was deprived of the opportunity to present evidence in mitigation on the alleged violation of his supervised release and because he received additional indictments during this time. However, Defendant waived his March 9, 2018, hearing regarding violations of supervised release. *See* 4:12-cr-00211, Dkt. 251. Likewise, Defendant does not allege that had he been brought before a United States magistrate judge sooner, he would not have subsequently been indicted. *See* Dkt. 202 at 5. Therefore, Defendant was not prejudiced by the thirty-seven day delay between his January 29, 2018, arrest and his appearance before a United States magistrate judge on March 6, 2018. Accordingly, Defendant's suppression motion on this ground should be denied.

## **CONCLUSION AND RECOMMENDATION**

Based on the foregoing, the Court finds that the Probation Officers were permitted to contact local law enforcement after discovering drugs during a routine, unannounced home visit. The Court further finds that that Defendant voluntarily gave his consent for Langehennig to enter his residence on December 19, 2018. The Court finds that suppression is not the appropriate remedy for the thirty-seven day delay between Defendant's arrest and his initial appearance, during which time Defendant was held in state custody. Accordingly, the Court recommends that Defendant's Motion to Suppress (Dkt. 159) be **DENIED**.

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge.  28 U.S.C. § 636(b)(1)(C).

A party is entitled to a *de novo* review by the district court of the findings and conclusions contained in this report only if specific objections are made, and failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report shall bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C.A. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 23rd day of October, 2018.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE